Wayne ESSARY, Marzell Essary, Russell Essary, Lloyd Essary, and Ray Essary, Plaintiffs/Appellees,

v.

Michael E. COX, Harold E. Petty, and Cox Oil Company, Inc., Defendants/Appellants.

Court of Appeals of Tennessee, Western Section, at Jackson.

July 13, 1992.

Application for Permission to Appeal Denied by Supreme Court Oct. 26, 1992.

Charles C. Exum, Jackson, for defendants/appellants.

George C. Thomas, Jr., William R. Neese, Dresden, for plaintiffs/appellees.

FARMER, Judge.

Defendants, Michael E. Cox, Harold E. Petty, and Cox Oil Company, Inc., appeal from the trial court's order holding that restrictive language contained in a prior deed constituted a restrictive covenant running with the land which was binding on Defendants as remote grantees. The order further enjoined Defendants from selling oil and gas supplies and products from their property in contravention of the covenant.

At trial the parties stipulated to the following facts:

1. Prior to March 22, 1977, the Plaintiffs, Wayne Essary and Marzell Essary, owned a service station and, on an adjoining lot, a convenience store.

2. On March 22, 1977, the Plaintiffs conveyed the convenience store property to Moubray and wife by Warranty Deed containing the following language:

> It is expressly understood and agreed that the above-described premises shall not be used for the purpose of any sales of oil and gas supplies or products.

3. On September 22, 1978, Ruby Nell Moubray, now Barker, conveyed the convenience store property to Powell and later executed a Deed of Correction. Neither of these deeds contained the language set forth in Paragraph 2 above.

4. On March 7, 1981, Ruby Nell Moubray Barker was conveyed the aforesaid convenience store property by a Trustee's Deed. This Trustee's Deed did not contain the language set forth in Paragraph 2 above.

5. On November 23, 1981, Ruby Nell Moubray Barker conveyed the convenience store property to Everhart. This deed contained the following language:

> There is a restrictive covenant on the above-described premises as found in Deed Book 187, Page 479, ROWCT, prohibiting the sale of oil and gas supplies or products.

6. On October 19, 1989, Everhart conveyed the convenience store property to defendants Cox and Petty. The deed did not contain the language set forth either in paragraph 2 or paragraph 5 above. In fact, such language was specifically left out of the deed at the request of the defendants Cox and Petty.

7. On January 2, 1985, the Plaintiffs, Wayne Essary and wife, Marzell Essary, conveyed the service station property adjacent to the convenience store property

to their children, Russell Essary, Lloyd Essary and Ray Essary.

8. The Plaintiffs, Wayne Essary and wife, Marzell Essary, operated a service station on the service station property continuously for several years prior to March 22, 1977, and until conveying same to their sons on January 2, 1985. Their sons worked in the service station for several years before buying it in 1985. The Plaintiffs, Russell Essary, Lloyd Essary and Ray Essary are still indebted to the Plaintiffs, Wayne Essary and Marzell Essary, for the purchase price of the service station property.

9. The Plaintiffs, Russell Essary, Lloyd Essary and Ray Essary worked in the service station business on the service station property for several years before they purchased it in 1985.

10. The Plaintiffs, Russell Essary, Lloyd Essary and Ray Essary have continuously operated a service station on the service station property from January 2, 1985, until the present.

11. On September 20, 1989, Rodney D. Everhart, et ux, entered into a contract to sell the business and convenience store property to Cox Oil Company.

12. On October 9, 1989, William B. Acree, Jr., attorney for Cox Oil Company, wrote W. Michael Maloan, attorney for Rodney D. Everhart, et ux, concerning the preparation of the deed from Everhart to Cox Oil Company.

13. On October 12, 1989, William Michael Maloan wrote William B. Acree, Jr. concerning this transaction.

14. The convenience store property is owned by Michael E. Cox and Harold E. Petty, who are stockholders of Cox Oil Company. Cox Oil Company, is a Tennessee corporation and conducts business upon the property in question. The business is a convenience store type operation, and sells motor oil, transmission fluid, brake fluid, antifreeze, and other products of a similar nature on the subject property.

On appeal Defendants present the following issue for review:

Whether the Chancellor erred in holding that the language in a deed prohibiting the sale of oil or gas supplies on the property conveyed was a restrictive covenant running with the land rather than a personal covenant where the heirs and assigns of the grantees were not bound by the express language of the original deed and where the subject property has since been sold and conveyed several times.

We conclude that this issue is controlled by *Lowe v. Wilson*, 194 Tenn. 267, 250 S.W.2d 366 (1952). In *Lowe*, the grantees filed a declaratory judgment action seeking a construction of the following clause which was contained in their deed:

It is hereby agreed and understood between the parties hereto that no beer, beverages, or intoxicants of any kind or character shall ever be sold upon the lot or parcel of land herein conveyed, and this agreement is a part of the consideration for this sale.

194 Tenn. at 268, 250 S.W.2d at 367. In determining whether the clause was a covenant running with the land or a mere personal agreement, the Supreme Court recognized the rule that "covenants restricting the use of land and preventing its free and unrestricted enjoyment are not favored, and will be strictly construed against the restriction." 194 Tenn. at 269, 250 S.W.2d at 367. Although the provision clearly stated that no intoxicants shall ever be sold upon the lot conveyed, the Court held that the parties' failure to specifically bind their heirs and assigns prevented the covenant from running with the land. 194 Tenn. at 271, 250 S.W.2d at 368.

Citing *Ridley v. Haiman*, 164 Tenn. 239, 47 S.W.2d 750 (1932), and *Owenby v. Boring*, 38 Tenn.App. 540, 276 S.W.2d 757 (1954), Plaintiffs argue that the parties' intent to mutually bind their successors and assigns need not be spelled out within the deed but may be gleaned from the surrounding circumstances. According to Plaintiffs, these circumstances are that, as stipulated, Plaintiffs operated a service station which sold oil and gas products on the lot adjoining the convenience store lot. When Plaintiffs sold the convenience store

property to the Moubrays in 1977, they inserted the restrictive language so that the Moubrays would not compete directly with Plaintiffs by selling oil and gas products on the premises. It is only logical, Plaintiffs insist, that they would intend for the restrictive language to apply for as long as Plaintiffs operated the service station. In addition, in the second deed executed by Ruby Nell Moubray Barker, Ms. Barker noted the existence of the restrictive covenant in Plaintiff's original deed to her, the implication being that Ms. Barker believed this restriction applied to subsequent grantees of the convenience store property.

We note, however, that both of the above cases cited by Plaintiffs involved residential developments wherein deeds contained restrictive covenants which did purport to bind the parties' successors and assigns and which evidenced a common development plan or scheme. We believe these cases to be distinguishable on this basis alone.

Plaintiffs additionally cite *Stracener v. Bailey*, 737 S.W.2d 536 (Tenn.App.1986), another case involving a residential development, for the proposition that the grantee need only have notice of a restrictive covenant for such to be enforced against him. In *Stracener*, the developers indicated on the subdivision plat their intent to restrict a portion of the subdivision for use as a park and recreation area. This Court held that this act by the developers created an equitable servitude enforceable against a remote grantee who attempted to develop the land. The existence of a development scheme, as recorded on the subdivision plat, put subsequent purchasers on notice that possible restrictions applied to use of the land. *Stracener*, 737 S.W.2d at 539.

■ In cases involving a common development plan, therefore, courts have demonstrated a willingness to enforce restrictive covenants, in the form of equitable servitudes, under the rationale that a remote grantee's knowledge of such restrictions may be imputed from the existence of a common plan as evidenced in deeds or on the plat itself. The principle behind these cases is that, when grantees purchase land within a development in reliance on the general scheme or plan as expressed by the developer, equity requires that the grantees be able to mutually enforce the restrictions. *Ridley*, 164 Tenn. at 252–53, 47 S.W.2d at 755. Outside the context of restrictions which evidence a common development plan, however, Plaintiffs have cited no authority in this jurisdiction for the proposition that restrictive covenants may be imposed on remote grantees based upon their knowledge of the existence of a prior restriction. Under *Lowe, supra,* the restriction additionally must purport to apply to the parties' successors and assigns, i.e. remote grantees.

■ Further, this Court must construe the restrictive covenant purporting to prohibit the sale of oil and gas products on Defendants' property against such a restriction. *Lowe*, 194 Tenn. at 269, 250 S.W.2d at 367. On its face, the restrictive covenant which Plaintiffs seek to enforce merely evidences an agreement between Plaintiffs and the Moubrays that the convenience store property would not be used to sell oil and gas products. This language appears to be even less restrictive than the *Lowe* covenant, under which the parties agreed that no intoxicants would *ever* be sold upon the lot conveyed. The Supreme Court held that covenant to be unenforceable against remote grantees.

Absent express language indicating that the parties intended for the restriction on the sale of oil and gas products to apply to the parties' successors and assigns, this Court is unwilling to interfere with Defendants' free and unrestricted enjoyment of their property.

We hold that the restrictive covenant alleged here does not run with the land and, therefore, does not bind the Defendants or restrict their use of the subject property. The judgment of the trial court is reversed. Costs of this appeal are taxed to appellees, for which execution may issue if necessary.

TOMLIN, P.J. (W.S.), and HIGHERS, JJ., concur.