IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
APRIL 2000 Session

## JASON SLOAN d/b/a SLOAN CONSTRUCTION v. SHELBY RAY PERRYMAN, JR., ET AL.

**Direct Appeal from the Chancery Court for Maury County**
**No. 97-159; The Honorable Stella L. Hargrove, Chancellor**

---

### No. M1999-00828-COA-R3-CV - Filed August 31, 2000

---

This appeal arises from a breach of contract suit and action to assert priority of a mechanics lien filed by Jason Sloan ("Contractor") against Shelby Ray Perryman ("Owners") and First Farmers & Merchants National Bank ("Bank"). Contractor sought recovery for labor and materials under the contract including expenses that exceeded Contractor's original bid price. In the alternative, Contractor sought recovery under quantum meruit. The court granted Bank's motion for summary judgment on the issue of priority of liens. Following trial, the court awarded Contractor damages under an implied contract theory, limiting Contractor's recovery to the bid price. In addition, the court denied Contractor's claim for alternative recovery in quantum meruit. Contractor appeals.

**Tenn. R. App. P. 8; Appeal as of Right; Judgment of the Chancery Court Affirmed in Part, Reversed in Part and Remanded**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which FARMER, J., and LILLARD, J., joined.

L. Robert Grefseng, Columbia, for Appellant

Thomas F. Bloom, Nashville, for Appellees Shelby and Jamie Perryman

Scott C. Williams, Columbia, for Appellee First Farmers & Merchants National Bank of Columbia

### OPINION

### Facts and Procedural History

On May 7, 1996, Owners entered into a contract for Contractor to build a residence on Owners' property. Owners provided house plans and Contractor submitted a bid to build the

residence for a total cost of around seventy-two thousand dollars.[1]  The contract did not include the actual dollar amount stated in the bid, but did contain a provision allowing for reduction in costs for any on-site work performed by Owners as well as a provision requiring owners to bear all construction expenses.

Owners obtained a construction loan from First Farmers & Merchants National Bank ("Bank").  The loan agreement included the bid price of seventy-one thousand, seven hundred fifty-seven dollars and twenty-one cents ($71,757.21).  Bank's loan was secured by a construction mortgage on Owner's future residence.  Both Owners and Contractor signed a pre-loan affidavit stating "no labor or materials, pre-fabricated or otherwise, have been used or prepared for use on said premises to this date (6/7/96)." Bank's deed of trust on the property was executed and filed on June 7, 1996.

Contractor began construction on June 10, 1996.[2]  Throughout the construction project, Contractor periodically provided Owners with bills for materials and labor which  Owners paid as they came due. When construction was completed in September 1996, Contractor presented owner with three final invoices totaling over fifteen thousand dollars.  At this point, Owners had already spent almost seventy-one thousand dollars on the project and did not realize costs had exceeded the original bid price.  Owners refused to pay additional costs.

On November 12, 1996, Contractor filed a mechanics lien against Owners' property to secure payment for labor and materials.[3]  Thereafter, on March 11, 1997, Contractor filed suit against Owners and Bank to recover additional costs under breach of contract theory.  Contractor asserted that Owners owed almost twenty-three thousand dollars, including a seventy-five hundred dollar contractor fee.  In the alternative, Contractor sought recovery under quantum meruit.  In addition, Contractor asserted that his mechanics lien had priority over Bank's construction mortgage.

Owners filed a counter-claim alleging outrageous conduct and gross negligence by Contractor.  Owners based this claim on Contractor's alleged negligence in preparing an

---

[1]During negotiations, Owners stated that maximum amount of money available for the project was a home loan for seventy-five thousand dollars.

[2]Although Contractor used the June date in his original complaint, he later claimed that the actual date of construction was April 17, 1996. Contractor amended the date after the priority of liens became an issue below. According to Contractor, the preliminary dozer work and some foundation work took place in April 1996. In addition, "batter boards" were created and installed and a temporary utility pole was erected.

[3]The creation and enforcement of mechanics lien is governed by statute.  Contractor seeks recovery under § 66-11-104 of the Tennessee Code.  This statute provides that the lien takes affect upon "the visible commencement of operations."  While this term is not defined, the statute specifically excludes "demolition, surveying, excavating, clearing, filling or grading, placement of sewer or drainage lines or other underground utility lines or work preparatory therefor, erection of temporary security fencing and the delivery of materials therefor."  Contractor asserts that the construction and placement of "batter boards" and the placement of a temporary utility pole qualify as visible commencement of operations.

unreasonable bid and his subsequent failure to stay within the bid price. Bank filed an answer asserting that its deed of trust had priority over Contractor's mechanics lien because the deed of trust was executed and filed prior to the commencement of construction.

Contractor filed a motion for partial summary judgment. Court granted Contractor summary judgment on Owner's counter-claim but allowed Owners to amend to add a breach of contract claim. The court denied summary judgment on issue of priority of the mechanics lien and construction mortgage. Bank later filed a motion for summary judgment on this issue. After a hearing on priority, the court held Bank's construction mortgage had priority over the mechanics lien based in part on the pre-construction loan affidavit signed by Contractor.

The case proceeded to trial on the remaining claims between Contractor and Owner. At trial, Contractor claimed Owners made several deviations from the original plans that resulted in additional costs for materials and labor. Among these deviations from the original plans were the following: Owners' use of more expensive fixtures and material; additional windows; foundation costs; the installation of additional electrical, phone and cable outlets; and the use of concrete rather than vinyl siding. Contractor also claimed site-preparation work done by Owners had to be redone and created additional expenses. Owners claimed these deviations from the original plans were offset by their performance of the on-site work. In addition, Owners claimed Contractor did not tell them the project was over budget and failed to warn them of all additional costs.

The trial court found the parties' written contract was unenforceable because of the failure to include a specific price term. However, the court held that an implied contract existed between the parties for an agreed on maximum cost of seventy-one thousand, seven hundred fifty-seven dollars and twenty-one cents ($71,757.21) and that the contract was not a "cost-plus contract." The amount awarded was one thousand ten dollars and twenty-one cents ($1,010.21), which represented the difference between what Owners already paid to Contractor and the bid price. In addition, the court held that Contractor did not meet the burden of proof to recover under quantum meruit.

Contractor appeals, alleging the court erred in holding the written contract unenforceable. as well as in its interpretation of the implied contract. In the alternative, Contractor asserts the trial court erred in denying the claim of unjust enrichment or quantum meruit. In addition, Contractor claims that court erred in granting Bank's motion for summary judgment on the issue of loan priority.

**Analysis**

The standard of review for a non-jury case is de novo upon the record. Wright v. City of Knoxville, 898 S.W.2d 177, 181 (Tenn. 1995). There is a presumption of correctness as to the trial court's factual findings, unless the "preponderance of the evidence is otherwise." TENN. R. APP. P. Rule 13(d). For issues of law, the standard of review is de novo, with no presumption of correctness. Ridings v. Ralph M. Parsons Co., 914 S.W.2d 79, 80 (Tenn. 1996). In the case at bar, the primary issue involves the interpretation of the contract between Owners and Contractor.

The interpretation of a written agreement is a matter of law and not of fact, therefore, our review is de novo on the record with no presumption of the correctness of the trial court's conclusions of law. Union Planters Nat'l Bank v. American Home Assurance Co., 865 S.W.2d 907, 912 (Tenn. App.1993).

The cardinal rule for interpretation of contracts is to ascertain the intention of the parties from the contract as a whole and to give effect to that intention consistent with legal principles. Winfree v. Educators Credit Union, 900 S.W.2d 285, 289 (Tenn. Ct. App.1995); Rainey v. Stansell, 836 S.W.2d 117, 118 (Tenn. Ct. App.1992). In construing contracts, the words expressing the parties' intentions should be given their usual, natural, and ordinary meaning. Taylor v. White Stores, Inc., 707 S.W.2d 514, 516 (Tenn. Ct. App.1985). In the absence of fraud or mistake, a contract must be interpreted and enforced as written, even though it contains terms which may seem harsh or unjust. Heyer-Jordan & Assocs. v. Jordan, 801 S.W.2d 814, 821 (Tenn.App.1990).

An ambiguity in a contract is characterized as doubt or uncertainty arising from the possibility of the same language being fairly understood in more ways than one. Hillis v. Powers, 875 S.W.2d 273, 276 (Tenn. App.1993). However, the parties to a contract cannot create an ambiguity where none exists. Edwards v. Travelers Indemnity Co., 201 Tenn. 435, 300 S.W.2d 615, 617-618 (1957). "Where there is no ambiguity, it is the duty of the court to apply to the words used their ordinary meaning and neither party is to be favored in their construction." Heyer-Jordan at 821. With the foregoing principles in mind, we now turn to the parties' contract.

## A. Contract Interpretation

On appeal, Contractor asserts that the trial court erred in holding the written contract unenforceable and in interpreting the implied contract between the parties as a "fixed price" contract rather than a "cost plus" contract. Based on the following, we find the trial court erred in holding that the written contract was unenforceable.

The lower court held the written contract was unenforceable because it did not contain a specific price term. In our review of the record, we find that there is a "price term" included within the construction contract. Under a section entitled, The Owner's roles and responsibilities, the contract provides: "All construction expenses are to be borne by the Owners. The Project Manager (Contractor) is not to be held liable for any unpaid bills..." In addition, the contract has a very detailed section providing for Contractor's fee of ten percent of the cost of construction.[4] The plain meaning of the provisions is neither ambiguous nor uncertain. From these contract terms, it is clear that the parties intended that Owners bear the cost of materials and labor as well as the cost of Contractor's services.

---

[4]We find it appropriate to note that while there was no fixed price within the contract, Contractor's fee is fixed to ten percent of the cost of construction based on the amount of the construction loan.

-4-

Accordingly, the trial court erred in finding the written contract unenforceable for lack of a specific price term. Therefore, this issue is remanded for further proceedings consistent with our finding. Based on our finding that the written contract in enforceable, we find it unnecessary to address Contractor's quantum meruit claim.[5]

## B. Priority of Liens

As a final issue, Contractor asserts the trial court erred in granting Bank summary judgment on the issue of lien priority. The court below found Bank's construction loan mortgage had priority over the mechanics lien based on a waiver or subordination clause in the construction loan agreement and pre-loan affidavit. Contractor claims visible commencement of operations began in April 1996, prior to the recording of Bank's construction loan mortgage. In addition, Contractor asserts that the pre-loan affidavit was not a valid waiver. Based on the following, we find that the waiver was valid and that the court did not err in granting Bank's motion for summary judgment.

Whether the trial court erred in granting or denying a Rule 56 Motion for Summary Judgment is purely a question of law. See TENN. R. CIV. P. Rule 56.04. On review, no presumption of correctness attaches to the trial court's judgment. Therefore, our task is limited to determining whether the requirements for summary judgment have been met. Cowden v. Sovran Bank/Central South, 816 S.W.2d 741, 744 (Tenn.1991). A Motion for Summary Judgment should be granted only when there is no genuine issue with regard to the material facts relevant to the claim or defense contained in the motion, and the moving party is entitled to a judgment as a matter of law on the undisputed facts. Byrd v. Hall, 847 S.W.2d 208, 210 (Tenn.1993); Anderson v. Standard Register Co., 857 S.W.2d 555, 559 (Tenn.1993). The moving party has the burden of proving that its motion satisfies these requirements. Downen v. Allstate Ins. Co., 811 S.W.2d 523, 524 (Tenn.1991).

The standards governing the assessment of evidence in the summary judgment context are also well established. Courts must view the evidence in the light most favorable to the nonmoving party and must also draw all reasonable inferences in the nonmoving party's favor. Byrd, 847 S.W.2d at 210-11. Courts should grant a summary judgment only when both the facts and the inferences to be drawn from the facts permit a reasonable person to reach only one conclusion. Bain v. Wells, 936 S.W.2d 618, 622 (Tenn. 1997).

As stated above, in reviewing whether a summary judgment motion should be granted, the court must first determine whether there are any genuine issues of material fact. From the record,

---

[5]In order to recovery in quantum meruit, these factors must be present: *there must be no existing, enforceable contract between the parties covering the same subject matter*; the party seeking recovery must prove that it provided valuable goods and services; the party to be charged must have received the goods and services; the circumstances must indicate that the parties involved in the transaction should have reasonably understood that the person providing the goods or services expected to be compensated; and the circumstances must also demonstrate that it would be unjust for the party benefitting from the goods or services to retain them without paying for them. Castelli v. Lien, 910 S.W.2d 420, at 427 (Tenn. Ct. App. 1995)(emphasis added.)

it is clear that no facts affecting the outcome of this issue were in dispute. All parties agreed the pre-loan affidavit as well as the construction loan agreement was signed on or about June 7, 1996. Indeed, the only question below was a question of law as to whether or not Contractor waived or subordinated his mechanics lien to Bank's construction loan mortgage. Therefore, Bank met the initial burden in obtaining a summary judgment.

We now turn to whether or not Bank was entitled to judgment as a matter or law. The trial court held that, due to the pre-loan affidavit and the construction loan agreement, Contractor's claim was waived or subordinated to Bank. Specifically, the pre-loan affidavit stated that "no labor or materials, pre-fabricated or otherwise, have been used or prepared for use on said premises to this date (6/7/96)." This affidavit was signed by Contractor and Owners and notarized. In addition, the construction loan agreement contained the following language: "contractor...waives any rights under T.C.A. Section 66-11-108, and agrees to rely for his protection upon the owners and upon any equity in the property over and above all that may be due, or may become due, to the Bank..." This statement, when read with the entirety of the loan document and the pre-loan affidavit expresses the clear intention of the parties' to grant priority to Bank.[6] Accordingly, we hold that Contractor waived or subordinated his claim to that of the Bank. See also Tenn. Code Ann. § 66-11-124(b)[7]; John J. Heirigs Const. Co., Inc. v. Exide, 709 S.W.2d 604 (Tenn. Ct. App. 1986).

Based on the above, we find that the trial court did not err in granting Bank's motion for summary judgment. Due to Contractor's waiver, Bank was entitled to judgment on the issue of priority as a matter of law. Accordingly, the decision of the trial court is affirmed on this issue.

**Conclusion**

---

[6] In any search for meaning of an instrument its terms are to be interpreted and their legal effect determined by consideration of the agreement as a whole. Paul v. Insurance Co. of North America, 675 S.W.2d 481, 483 (Tenn. Ct. App.1984). It is the universal rule that a contract must be viewed from beginning to end and all its terms must pass in review, for one clause may modify, limit or illuminate another. Cocke County Bd. of Highway Com'rs v. Newport Utilities Bd., 690 S.W.2d 231, at 237 (Tenn. 1985) citing Associated Press v. WGNS, Incorporated, 348 S.W.2d 507 (Tenn. Ct. App. 1961).

[7] Tenn. Code. Ann. § 66-11-124 provides in relevant part: (b) Any person other than a laborer may, as a part of that person's contract, waive any right of lien under this part, but a laborer may not waive such laborer's right of lien.

For the foregoing reasons, the decision of the trial court is hereby affirmed in part, reversed in part and remanded. Costs of appeal are taxed one-half to Appellant, Jason Sloan, and one-half to Appellee, Shelby Ray Perryman, for which execution may issue, if necessary.

_____

ALAN E. HIGHERS, JUDGE