IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
June 25, 2002 Session

RICHARD TAYLOR, ANITA TAYLOR, and CLINTON LYNN TAYLOR,
v. STEVEN WAYNE BURLESON, BILLY FARRELL SNYDER and
FARRELL E. SNYDER, et al.

Direct Appeal from the Chancery Court for Washington County
No. 33877       Hon. Thomas J. Seeley, Jr., Circuit Judge

FILED AUGUST 15, 2002

No. E2001-02381-COA-R3-CV

In this declaratory judgment action, plaintiffs lot owners, sought to invalidate subdivision restrictive covenants on grounds other lot owners had violated the restrictions. The Trial Court refused. We affirm.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Chancery Court Affirmed.**

HERSCHEL PICKENS FRANKS, J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and CHARLES D. SUSANO, JR., J., joined.

Thomas C. McKee, Johnson City, Tennessee, for Appellants, Richard Taylor, Anita Taylor and Clinton Lynn Taylor.

Earl R. Booze, Johnson City, Tennessee, for Appellee, Linda Zollinger.

**OPINION**

In this declaratory judgment action, the Trial Court refused to declare invalid certain subdivision restrictions on plaintiffs' property, and plaintiffs have appealed.

Plaintiffs are owners of lots in Slaughter Acres Subdivision, subject to restrictions which designate that the lots are to be used for residential purposes only. Plaintiffs attack these

restrictions on the grounds that one of the lots is used by a church, and there was a lot that was used as a nursing home, and other lots have been used for "cottage industries", such as a pet shop, beauty salon and  photo studio.

Defendant Zollinger filed an Answer through counsel, stating that she purchased her lots in reliance on the residential use restrictions, and that plaintiffs had notice of the restrictions when they purchased the property in question, and other defendants responded *pro se.*[1]

Plaintiff Richard Taylor testified that he owned a business which distributed products for a home decoration company, and that he would receive one shipment per week by tractor-trailer, and that this shipment would be delivered throughout the week by two smaller trucks that he owned. His proposed building would have some office space, and the rest would be used to sort and store the merchandise.  He said that he had three employees, and that septic tank use would not be a problem.

The issue of whether there has been a waiver of a restrictive covenant, is "a question of fact to be determined on the facts and circumstances of each case." *Gordon v. Hirsch,* 1990 Tenn. App. LEXIS 162 (Tenn. Ct. App. March 6, 1990).  We review the trial court's ruling on these issues *de novo* with a presumption of correctness, unless the evidence preponderates against the finding. Tenn. R. App. P. 13(d).  While restrictive covenants are not favored in the law, they are strictly construed and, like other contracts, will be enforced according to the clearly expressed intention of the parties.  *Benton v. Bush*, 644 S.W.2d 690, 691 (Tenn. Ct. App. 1982).

Restrictive covenants can lose their force when they fail to serve a useful purpose. *Hewgley v. Vivo*, 1997 Tenn. App. LEXIS 153 (Tenn. Ct. App. March 5, 1997).  The *Hewgley* Court explained that restrictive covenants may be "rendered unenforceable if radical changes in the character of the neighborhood completely defeat the purpose of the covenant", and that in determining whether this has happened, the court will be concerned "primarily with the continuing value of the restrictive covenant to the entire neighborhood, and not the parties attempting to avoid the restrictive covenant."  *Id.*

Plaintiffs claim the restrictions at issue should not be enforced because they have been abandoned.  Abandonment occurs when there is "community acquiescence" to continued violations of the restrictions, and the abandonment must be so general "as to frustrate the object of the scheme with the result that enforcement of the restriction involved would seriously impair the value of the burdened lot without substantially benefitting the adjoining lots."  *Scandlyn v. McDill Columbus Corp.,* 895 S.W.2d 342 (Tenn. Ct. App. 1994).
In order to constitute abandonment, violations must be "so wide spread as to vitiate" the restrictive covenant at issue.  *Ruth v. Cove Creek, LLC*, 1999 Tenn. App. LEXIS 195 (Tenn. Ct. App. March 24, 1999). *Accord:  Wilson v. Woodland Presbyterian School*, 2002 Tenn. App. LEXIS

---

[1]Some defendants filed Answers *pro se* to the Petition.  A total of 21 opposed the Petition, and 29 had no objection.

462 (Tenn. Ct. App. June 25, 2002). In a case factually analogous, the Court in *Hardesty v. Silver*, 302 S.W.2d 578 (Ky. Ct. App. 1956), found that there were homeowners with home-based businesses in the development, but concluded that acquiescence in "slight and inconsequential" violations would not prevent another property owner from objecting to a substantial violation. Similarly, in this case the prior violations, a beauty shop, an antique shop, and a nursing home, as well as the current violations of a pet shop and photo studio, have all consisted of residences which had an incidental business use in them as well. The only exception is the church, but it has not been characterized as "commercial" by anyone but the plaintiffs, and it was clear that none of the homeowners even knew it was in the subdivision until this action was filed. The houses with the businesses were not altered in any way, and in most cases, there was no outward manifestation which would indicate that any business was located therein. These past and current uses are significantly different from plaintiffs' proposed use, which will be a large, completely commercial structure in both appearance and purpose.

We hold that the Trial Court was correct in finding that the residential character of the neighborhood has not been abandoned. The evidence preponderates that there has been no community acquiescence which would be sufficient "to frustrate the object of the scheme with the result that enforcement of the restriction involved would seriously impair the value of the burdened lot without substantially benefitting the adjoining lots." *Scandlyn v. McDill Columbus Corp.*, 895 S.W.2d 342 (Tenn. Ct. App. 1994).

Next, plaintiffs argue that the homeowners have waived the "residential only" restriction by failing to enforce it in the past. In a case dealing with the enforcement of restrictions, this Court has previously explained that waiver is the "voluntary relinquishment of a known right", and that it must be proven by "a course of acts and conduct, or by so neglecting and failing to act, as to induce a belief that it was his intention and purpose to waive." *Strickler v. Garrison*, 1997 Tenn. App. LEXIS 882 (Tenn. Ct. App. Dec. 11, 1997); *see also Hicks v. Cox*, 978 S.W.2d 544 (Tenn. Ct. App. 1998).

In this case, defendant Zollinger testified that she was unaware of the other violations until this lawsuit was filed. Other homeowners testified that they might have been aware of one or two, but not of other violations. None of the homeowners seemed to know that the church was involved, because it was not "in" the subdivision, but rather was located on the highway on the outskirts of the subdivision, and did not use any of the subdivision roads for access. The homeowners agreed that the incidental violations did not create traffic problems or other concerns, and that the neighborhood remained a quiet, family place and retained its residential character.

On the other hand, by contrast, the plaintiffs' property would be used entirely for commercial use, and while plaintiffs' business would front on the highway, the property is next to a main subdivision access road which would be evident to anyone entering or exiting the subdivision, and once the restrictions were voided, the undisputed proof was that the property could be sold and then used for any commercial purpose allowed by the zoning.

We affirm the Trial Court's finding that the plaintiff failed to carry the burden to show the restrictions had been waived by any action or inaction of the homeowners.

For the foregoing reasons, we affirm the Judgment of the Trial Court, and remand, with the cost of the appeal assessed to plaintiffs Richard Taylor, Anita Taylor, and Clinton Lynn Taylor.

_____
HERSCHEL PICKENS FRANKS, J.